**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MASSACHUSETTS**
**EASTERN DIVISION**

| | |
|---|---|
| **In re** <br><br> **JOSE C. BICALHO,** <br><br> Debtor <br><br> **MARIE OJEDA,** <br><br> Plaintiff <br><br> **v.** <br><br> **JOSE C. BICALHO,** <br><br> Defendant | Chapter 7 <br> Case No. 12-11837-FJB <br><br><br> Adversary Proceeding <br> No. 12-1062 |

**MEMORANDUM OF DECISION**

I.  **Overview and Procedural History**

On March 5, 2012, the defendant and chapter 7 debtor, Jose Bicalho (the "Defendant"), filed a voluntary petition under chapter 7 of the bankruptcy code, commencing the present bankruptcy case. On March 9, 2012, the plaintiff, Marie Ojeda (the "Plaintiff"), timely filed the complaint commencing this adversary proceeding. By her complaint, she seeks a determination that a debt owed to her by the Defendant is excepted from discharge under 11 U.S.C. § 523(a)(2)(A). The parties have tried the matter and submitted proposed findings of fact and conclusions of law. The Court now makes the following findings and rulings and, on the basis thereof, concludes that the debt in question is not excepted from discharge.

II.     **Findings of Fact**

1.      At all relevant times, the Defendant owned and operated ZE Carlos Auto Repair (the "Auto Repair Shop"), an automobile repair shop located in Framingham, Massachusetts.  At all relevant times, the Defendant's wife, Tonia Bicalho ("Tonia"), worked at the Auto Repair Shop.  She handled all of the billing and paperwork for the business.

2.      In September 2009, the Plaintiff brought her 2004 Mazda (the "Vehicle") to the Auto Repair Shop because "it was making a noise."  The Defendant represented to the Plaintiff, either personally or through an employee, that the Auto Repair Shop would repair the Vehicle.  The Plaintiff relied on this representation.  She paid $306 to the Auto Repair Shop for the parts needed to repair the Vehicle.  She left the Vehicle with either the Defendant or an employee.

3.      Later, the Plaintiff received a call from Tonia that the Vehicle was ready to be picked up.  The Plaintiff returned to the Auto Repair Shop and picked up the Vehicle.

4.      After the Plaintiff picked up the Vehicle, she noticed that it continued to make the noise which had prompted her to initially take it in for repairs.  Consequently, the Plaintiff brought the Vehicle back to the Auto Repair Shop.

5.      When the Plaintiff brought the Vehicle back to the Auto Repair Shop, she spoke with either the Defendant or an employee.  The person she spoke with told her that there was a problem with the engine.  The Plaintiff again left the Vehicle with the Auto Repair Shop.

6.      The Auto Repair Shop sent the Vehicle to a Mazda Dealership in Wellesley ("Wellesley Mazda") for a diagnostic test.  After receiving the results of the diagnostic test, a mechanic at the Auto Repair Shop determined that the Vehicle needed a new engine and so informed the Plaintiff.

7.      The Plaintiff paid the Auto Repair Shop $400 for the diagnostic test and $850 as a deposit for a replacement engine.  The Auto Repair Shop remitted the entire $400 to Wellesley Mazda.

The Auto Repair Shop remitted the entire $850 to an auto parts supplier from which it ordered a replacement engine for the Vehicle.  The engine was delivered directly to the Auto Repair Shop.

8.  A mechanic at the Auto Repair Shop installed the replacement engine into the Vehicle. After installation of the replacement engine, the Vehicle no longer ran at all.

9.  The Auto Repair Shop then sent the Vehicle to a Mazda dealership in Shrewsbury ("Shrewsbury Mazda") for a diagnostic test to determine why it was no longer running.  The diagnostic test revealed that the wrong engine had been installed into the Vehicle.

10.  The Defendant, either personally or through a representative, then informed the Plaintiff that the Auto Repair Shop was not going to repair the Vehicle.

11.  After learning that the Defendant was no longer going to repair the Vehicle, the Plaintiff contacted an attorney who, in turn, attempted to contact the Defendant in an attempt to resolve the matter.

12.  The Defendant's son, Sam Bicahlo, called the Plaintiff's attorney and left a voicemail.[1] The Defendant otherwise failed to respond to the attempts of Plaintiff's counsel to resolve the matter.

13.  In February 2010, the Plaintiff commenced litigation against the Defendant in Framingham District Court.

14.  In addition to the $1,250 she paid to the Auto Repair Shop, the Plaintiff ultimately incurred additional charges to tow the Vehicle, store the Vehicle, and repair the Vehicle totaling $3,088.74.

15.  The Plaintiff was never charged for any of the labor performed by the Auto Repair Shop and the Auto Repair Shop made no profit from the work performed on the Vehicle.  The initial $306 was used to purchase replacement parts for the Vehicle, the next $400 was remitted directly to Wellesley

---

[1] The content of this voicemail never came into evidence.

Mazda for the first diagnostic test, and the final $850 was remitted directly to an auto parts supplier for the replacement engine.

16. On January 28, 2011, the Plaintiff obtained a default judgement against the Defendant in Framingham District Court in the amount of $19,549.57, which included a trebling of the underlying damages and an award of attorney's fees under Mass. Gen. Laws. ch. 93A.

**III.    Jurisdiction**

The matter before the court is a complaint under 11 U.S.C. § 523(a) to determine the dischargeability of a debt. The matter arises under the Bankruptcy Code and in a bankruptcy case and therefore falls within the jurisdiction given the district court in 28 U.S.C. § 1334(b) and, by standing order of reference, referred to the bankruptcy court pursuant to 28 U.S.C. § 157(a). It is a core proceeding. 28 U.S.C. § 157(b)(2)(I) (core proceedings include determinations as to the dischargeability of particular debts). This court accordingly has authority to enter final judgment in the matter. 28 U.S.C. § 157(b)(1).

**IV.    Discussion**

**A.  Applicable Law**

Section 523(a)(2)(A) of the Bankruptcy Code excepts from discharge any debt "for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by false pretenses, a false representation, or actual fraud." 11 U.S.C. § 523(a)(2)(A). In order to establish that a debt is nondischargeable under § 523(a)(2)(A) due to a false representation, the plaintiff must prove each of the following elements by a preponderance of the evidence: "1) the debtor made a knowingly false representation or one made in reckless disregard of the truth; 2) the debtor intended to deceive; 3) the debtor intended to induce the creditor to rely upon the false statement; 4) the creditor actually relied upon the misrepresentation; 5) the creditor's reliance was justifiable; and 6) the reliance upon the

4

false statement caused damage." *McCrory v. Spigel* (*In re Spigel*), 260 F.3d 27, 32 (1st Cir. 2001), citing *Palmacci v. Umpierrez*, 121 F.3d 781, 786 (1st Cir. 1997).

The first element, making a knowingly false representation, refers to the conduct of the debtor and can include a debtor's promise to act, "[i]f, at the time he made his promise, the debtor did not *intend to perform*[.]" *Palmacci*, 121 F.3d at 786-87 (emphasis in original). The second element, intent to deceive, refers to the Debtor's mental state and specifically requires a mental state embracing an intent to deceive, manipulate, or defraud. *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 193, 96 S.Ct. 1375, 1380–81, 47 L.Ed.2d 668 (1976); *Palmacci*, 121 F.3d at 786-87. Intent to deceive may be demonstrated by showing that "a false representation has been made . . . recklessly, careless of whether it is true or false," or, in other words, with reckless disregard for the truth. *Palmacci*, 121 F.3d at 787 (citations omitted). "Availability of direct evidence to prove a debtor's intent to deceive a creditor is unlikely to be obtained. The court may infer fraudulent intent from the totality of circumstances." *Danvers Savings Bank v. Alexander*, 427 B.R. 183, 195 (Bankr. D. Mass 2010), citing *Palmacci*, 121 F.3d at 789. Among the circumstances from which scienter may be inferred are: the defendant's insolvency or some other reason to know that he cannot pay, his repudiation of the promise soon after made, or his failure even to attempt any performance. *Palmacci*, 121 F.3d at 789. Although the inquiries are distinct, in many cases the same factors show both the debtor's knowledge or recklessness as to the falsity of his representation and his intent to deceive. *Faria v. Silva* (*In re Silva*), 2014 WL 217889 at *5 (Bankr. D. Mass. 2014), citing *Bellas Pavers, LLC v. Stewart* (*In re Stewart*), MB 12–017, 2012 WL 5189048 at *8 n. 4 (B.A.P. 1st Cir. 2012).

### B.  Positions of the Parties

There are no disputes of law here, only disputes of fact as to the first two elements of § 523(a)(2)(A). The Plaintiff asserts that the Defendant falsely represented the he would repair the Vehicle when, in fact, he had no such intention. Rather, from the time the Plaintiff first brought her car

5

into the Auto Repair Shop, the Defendant had the subjective intent to deceive her. The Plaintiff argues that the Defendant's lack of intent to fulfill his promise as well as his intent to deceive the Plaintiff can be inferred from a review of the totality of the circumstances. The circumstances she cites include the Defendant's ultimate refusal to repair the Vehicle, the Defendant's statement to the Plaintiff that the Auto Repair Shop would not repair the Vehicle, and his failure to respond to the overtures of the Plaintiff's counsel.[2]

The Defendant counters that this is a case of negligence, not of fraudulent intent. The Defendant insists that at the time the Plaintiff paid money to the Auto Repair Shop, the Defendant intended to fix the Vehicle. As evidence of this intent, the Defendant notes that his Auto Repair Shop attempted multiple times to fix the Plaintiff's Vehicle and was ultimately unable to do it. Further, the Defendant made no profit on the transaction and did not charge the Plaintiff for labor. The weight of the evidence shows that the Defendant did intend to perform his promise to repair the Plaintiff's Vehicle at the time he made it. Accordingly, he neither made a false representation to the Plaintiff nor intended to deceive her. Any harm the Plaintiff incurred was the result of negligence.

**C. Analysis**

The Plaintiff seeks to satisfy the first two elements of § 523(a)(2)(A) by demonstrating that the Defendant did not intend to repair the Plaintiff's Vehicle at the time he represented otherwise. It is the Plaintiff's burden to prove this assertion by a preponderance of the evidence. On this record, as is often the case with proving intent, there is no direct evidence as to the Defendant's intent at the time he represented to the Plaintiff that he would repair the Vehicle. Accordingly, any finding of fraudulent intent in this case will have to be demonstrated through circumstantial evidence.

---

[2] In her opening statement at trial, Plaintiff's counsel asserted that the content of a message left by the Defendant's son, Sam Bicalho, on counsel's voicemail provided additional circumstantial evidence as to the Defendant's intent. The content of this voicemail did not come into evidence. Accordingly, I afford it no weight in my analysis.

The Plaintiff points to the Defendant's refusal to fix the Vehicle after learning that the wrong engine had been installed as evidence that he never intended to fix the Vehicle in the first place. The Plaintiff also points to the Defendant's failure to respond to the overtures of Plaintiff's counsel to resolve the matter as additional circumstantial evidence. This evidence combined with the rest of the record shows that the Defendant was probably negligent in his attempts to repair the Plaintiff's car. It shows that the Defendant ultimately breached his promise to repair the Plaintiff's car. However, it simply does not provide a sufficient basis for inferring that the Defendant did not intend to keep his promise at the time that he made it.

On the contrary, the evidence suggests that the Defendant initially intended to keep his promise, attempted multiple times to keep that promise (albeit incompetently), and ultimately breached that promise when he learned that his shop had installed the wrong engine into the Plaintiff's car. When the Plaintiff first brought the Vehicle in for repairs, the Defendant's shop attempted to fix it and only charged the Plaintiff for parts and not labor. When the Plaintiff brought the Vehicle in a second time, the Defendant's shop arranged for a diagnostic test, ordered a replacement engine, and installed the replacement engine while only charging the Plaintiff for the amounts it remitted to Wellesley Mazda and to the auto parts supplier. This is evidence that the Defendant did, in fact, intend to keep his promise at the time he made it and that he attempted to keep that promise multiple times before eventually breaching it.

The Plaintiff cites to this Court's decision in *Bolton v. Kenneally* for the point that "[a] promise is, by nature, a commitment, and the failure to honor that commitment by one having the ability to honor it is itself evidence that the promise was false." *Bolton v. Kenneally* (*In re Kenneally*), 2013 WL 2297089, at *5 (Bankr. D. Mass. 2013). In the *Kenneally* decision, this Court followed the quoted language with the caveat that while the failure to honor a promise is itself evidence that the promise was false, such evidence is not dispositive. *Id.* The failure of the defendant in the *Kenneally* case to perform was

7

supplemented by other evidence of fraudulent intent, including the defendant's apparent admission at trial that her promise to perform was "subject to reservations and contingencies" that she had hidden from the plaintiff-creditor. See id. at *5-6. In this case, the Plaintiff has provided no such supplemental evidence. She asks the Court to infer the Defendant's lack of intent to perform almost exclusively from his eventual failure to perform. The only additional circumstantial evidence she offers are the facts that the Defendant told the Plaintiff that he would not fix her car after he learned about the installation of the incorrect engine and that he failed to respond to the attempts of the Plaintiff's attorney to contact him. Again, while such behavior is clearly evidence that the Defendant breached his promise, it is hardly dispositive as to the issue of the Defendant's intent at the time he made the promise. It is certainly not enough to enable this Court to infer that he did not intend to keep his promise at the time he made it when the record demonstrates, as it does here, that the Defendant did attempt multiple times to repair the Plaintiff's Vehicle. I find that the Plaintiff has failed to meet her burden of proving by a preponderance of the evidence (1) that the Defendant made a knowingly false representation or one made in reckless disregard of the truth and (2) that the Defendant intended to deceive the Plaintiff. Accordingly, the Plaintiff has not established cause to except the debt from discharge under § 523(a)(2)(A).

VI.     Conclusion

For the reasons set forth above, a separate judgment will enter dismissing with prejudice the complaint for determination of nondischargeability.

Date: March 30, 2015

_____
Frank J. Bailey
United States Bankruptcy Judge